UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-00661-GNS-CHL

ROBERT STEARNS                                                                                    PLAINTIFF

v.

M & M CARTAGE CO., INC.                                                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 24), Defendant's Motion to Strike (DN 32), and Plaintiff's Motion for Alternative Dispute Resolution (DN 36). The motions are now ripe for a decision. For the reasons outlined below, the motions are **DENIED**.

### I.  STATEMENT OF FACTS AND CLAIMS

Plaintiff Robert Stearns ("Stearns") was employed by Defendant M&M Cartage Co., Inc. ("M&M") as a local delivery driver from 2012 until his termination on May 20, 2016. (Stearns Dep. 30:12-17, Oct. 9, 2017, DN 24-2; Def.'s Mot. Summ. J. Ex. B, at 2, DN 24-3; Mullaney Aff. ¶ 11, DN 24-4). According to M&M, it terminated Stearns for his absenteeism and refusing to dispatch. (Mullaney Aff. ¶¶ 11-12; Murphy Aff. ¶ 15, DN 24-5; Murphy Aff. Ex. 8, at 2, DN 24-5).

For attendance purposes, M&M uses a rolling year, which "starts with the first occurrence" and then proceeds "by reviewing the previous twelve months from the current date." (Murphy Aff. Ex. 1, at 2, DN 24-5). Its attendance policy defines the term "occurrence" as follows:

1

> One day or consecutive days of unexcused absences will be counted as an individual occurrence. More than three (3) consecutive days absence will require a physician's statement in order to be eligible for one occurrence. Failure to bring a physician's statement will result in those days being counted as individual occurrences.

(Murphy Aff. Ex. 1, at 2). The attendance policy addresses the consequences of numerous occurrences as follows:

- Four occurrences in a twelve month period – **VERBAL WARNING**
- Five occurrences in a twelve month period – **WRITTEN WARNING**
- Six occurrences in a twelve month period - **SUSPENSION**
- Seven occurrences in a twelve month period – **TERMINATION**
- Progressive discipline will apply to all employees affected by this policy. Employees will receive notification of attendance problems, which will allow them an opportunity to improve their attendance and understand the consequences.
- The Vice President must approve any exceptions to this policy.
- Attendance will be tracked over a rolling twelve month period – NOT A CALENDAR YEAR.

(Murphy Aff. Ex. 1, at 2-3).

On November 4, 2015, M&M gave Stearns a written warning notifying that he had six occurrences and that any further occurrence before August 3, 2016,[1] would result in his termination.[2] (Murphy Aff. Ex. 4, at 2). Despite what appeared to be a final warning, Stearns continued to miss work over the next six months, but M&M did not terminate his employment. According to M&M's Human Resource Manager, Stacey Murphy ("Murphy"), Stearns had the following absences prior to his termination: January 4, 2016; February 10, 2016; February 15, 2016; March 22, 2016; April 25, 2016; April 29, 2016; May 2-3, 2016 (which would have counted

---

[1] While the form reflects the date of August 3, 2016, that date may have been intended to be August 31, 2016. (Murphy Aff. ¶ 8). That discrepancy is not material to the pending motions.
[2] These occurrences were: August 3, 2015; August 10, 2015; August 24, 2015; September 24, 2015, and October 12, 2015, and October 26, 2015. (Murphy Aff. Ex. 4, at 2, DN 24-5). These absences would not have rolled off pursuant to M&M's attendance policy prior to Stearns's termination.

2

as one occurrence under M&M's policy); and May 16-20, 2016 (which would have counted as one occurrence if Stearns had provided a note from a doctor).[3] (Murphy Aff. Ex. 6, at 2-3, DN 24-5).

Towards the end of Stearns's employment, there was some communication between Stearns and M&M relating to his need for leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654.[4] Stearns contacted M&M's Vice President of Operations, Marty Mullaney ("Mullaney"), in approximately March 2016 regarding a need for FMLA leave for Stearns's wife. (R. Stearns Dep. 93:11-18, Oct. 9, 2017, DN 24-2; Mullaney Aff. ¶ 13, DN 24-4). Murphy subsequently contacted Stearns to inform him that his 2015 FMLA leave had expired and requested that he recertify the need for additional FMLA leave. (Murphy Aff. ¶ 10). According to Murphy, she prepared the FMLA certification form and left it for Stearns in the M&M dispatch office. (Murphy Aff. ¶ 10; Murphy Aff. Ex. 5, at 2-7, DN 24-5). Stearns never completed the healthcare provider certification form, and he denies ever receiving it. (Murphy Aff. ¶ 10; R. Stearns Dep. 119:14-22, DN 24-2).

On or about May 12, 2016, Stearns had a conversation with Murphy in which Stearns mentioned that they suspected his wife had cancer and he wanted information about applying for short-term disability coverage for his wife.[5] (Murphy Aff. ¶ 12; Murphy Aff. Ex. 7, at 2, DN 24-5). In Murphy's memorandum memorializing that conversation, Murphy does not mention Stearns's potential eligibility for FMLA leave for his wife's suspected cancer diagnosis.

---

[3] Some of those absences plausibly could have been protected by FMLA leave if it had been given, and it is uncontradicted that no FMLA leave was approved for Stearns in 2016.
[4] Prior to Stearns's termination, he had also taken intermittent FMLA leave for his wife's surgery in 2015, and he returned the completed health care provider certification for that FMLA leave. (Murphy Aff. ¶ 7; Murphy Aff. Ex. 3, DN 24-5).
[5] While her family had a history of cancer, Stearns's wife's condition was eventually diagnosed as osteoporosis. (R. Stearns Dep. 139:2-6, 139:14-18, Oct. 9, 2017, DN 32-1).

According to M&M, Stearns was absent from work from May 16-20, 2016. (Hayden Aff. ¶ 6, DN 24-7; Murphy Aff. Ex. 6, at 3). On May 20, 2016, M&M terminated Stearns for absenteeism and his refusal to dispatch. (Mullaney Aff. ¶¶ 11-12; Murphy Aff. ¶ 15; Murphy Aff. Ex. 8, at 2).

Stearns filed this action in Jefferson Circuit Court, Kentucky, asserting claims of retaliation and interference in violation of the FMLA. (Compl. ¶¶ 1, 51-71, DN 1-2). M&M timely removed the case to this Court. (Notice Removal, DN 1). Following the completion of discovery, M&M has moved for summary judgment. (Def.'s Mot. Summ. J., DN 24). M&M has also moved to strike Stearns's affidavit, and Stearns has moved for a settlement conference. (Def.'s Mot. Strike, DN 32; Pl.'s Mot. Alternative Dispute Resolution, DN 36).

## II. JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331.

## III. DISCUSSION

### A. Defendant's Motion for Summary Judgment

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

4

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Under FMLA, a qualifying employee may take up to twelve weeks per year for several reasons including "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). All twelve weeks of leave may be taken at once or may be taken on an intermittent basis. *See* 29 U.S.C. § 2612(b); 29 C.F.R. § 825.220. Employers may request medical certifications from employees to substantiate the entitlement for leave, and "once an employer makes a request, an employee has fifteen days, beginning the day after the request, to submit a medical certification form to his employer explaining the reason for his leave of absence." *Frazier v. Honda of Am. Mfg., Inc.*, 431 F.3d 563, 566 (6th Cir. 2005) (citing 29 C.F.R. § 825.305(b)). In this action, Stearns alleges claims of both retaliation and interference by M&M in violation of the FMLA. (Compl. ¶¶ 51-71).

1. *FMLA Retaliation*

The FMLA prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by this

5

subchapter." 29 U.S.C. § 2615(a)(2). Absent direct evidence to support this claim, the *McDonnell Douglas* burden-shifting framework applies. *See Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 313-16 (6th Cir. 2001)).

### a.     Prima Facie Case

To prove a prima facie case of retaliation under the FMLA, Stearns must present evidence that:

> (1) [he] was engaged in an activity protected by the FMLA; (2) the employer knew that [he] was exercising [his] rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to [him]; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006) (citing *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003)). A plaintiff must prove his or her prima facie case by a preponderance of the evidence. *See Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007) (citation omitted).

In its motion, M&M solely focuses on whether Stearns can satisfy the causal connection element of his prima facie case. (Def.'s Mem. Supp. Mot. Summ. J. 19). Taking the evidence in the light most favorable to the non-moving party, Stearns notified M&M of the need for FMLA leave in both March and May 2016. It was only after Stearns's absences from work in May 2016 that M&M followed through on the final warning issued in November 2015. As the Sixth Circuit has noted, "[t]his Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283-84 (6th Cir. 2012) (quoting

*DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004)). The closeness in time of Stearns's alleged May 12 notification to Murphy of his potentially FMLA-qualifying event to his termination for absenteeism the following week are suggestive of retaliation and are sufficient for him to meet his burden. *See White v. Telecom Credit Union*, 874 F. Supp. 2d 690, 707 (E.D. Mich. 2012) (relying on temporal proximity in concluding that the plaintiff had met her burden in proving the causal connection element of her prima facie case of FMLA retaliation).

### b. Employer's Burden

Because Stearns has met his initial burden, M&M must articulate a legitimate, nondiscriminatory reason for Stearns's termination. *See Gates v. U.S. Postal Serv.*, 502 F. App'x 485, 489 (6th Cir. 2012) (citation omitted). M&M contends that it terminated Stearns for his absenteeism and his refusal to dispatch. (Def.'s Mem. Supp. Mot. Summ. J. 19).

The Sixth Circuit has held that a poor attendance record can serve as a legitimate, nondiscriminatory reason for termination. *See Harris v. Circuit Court, Clerk's Office, Metro. Nashville*, 21 F. App'x 431, 433 (6th Cir. 2001). An employee's failure to dispatch in violation of company policy may also serve as a basis for termination. *See, e.g.*, *Brooks v. Phoenix Metals Co.*, No. 1:15-CV-3612-ODE-JKL, 2017 WL 11093573, at *16 (N.D. Ga. May 22, 2017) (holding that violation of a forced dispatch policy was a "legitimate, nondiscriminatory reason" for an employee's termination). In this case, however, the circumstances surrounding Stearns's termination necessarily require factual determinations precluding summary judgment. Most notably, Stearns disputes M&M's contention that he refused to dispatch during the week of May 16, 2017. (R. Stearns Dep. 134:1-135:10, DN 32-1).

Likewise, there are factual issues regarding Stearns's absenteeism. Under M&M's attendance policy, employees with more than seven occurrences in a twelve-month period would

be terminated. (Murphy Aff. Ex. 1, at 3). According to Murphy, Stearns was counseled several times during his employment at M&M—most recently on November 4, 2015. (Murphy Aff. ¶¶ 5, 8). On that date, Stearns was provided an Employee Warning Notice relating to his excessive absenteeism, notifying him that he would be terminated for any additional absences prior to August 3, 2016. (Murphy Aff. Ex. 4, at 2). Despite the very explicit warning that Stearns would be terminated for any further occurrences, Murphy acknowledges that Stearns was absent from work in January, February, March, April, and May 2016. (Murphy Aff. ¶¶ 9-11, 14). It was not until after Stearns informed M&M that his wife had health issues in March 2016[6] and May 2016 and that he may need to take FMLA leave that M&M followed through on its warning that it would terminate him. As stated above, these events happened close in time to create an inference of retaliation.

M&M now focuses on the reasons it belatedly doubts Stearns's explanation for his occurrences, but this evidence does not change what M&M had allegedly been told at the time—that Stearns's wife had a medical condition requiring him to take time off and that Stearns attributed his absences to his wife's medical condition. As this Court has recognized, however, when the alleged absenteeism is intertwined with an employee's entitlement to FMLA leave, an employer may not be able to meet its burden. *See West v. Pella Corp.*, No. 5:16-CV-154-TBR, 2017 WL 4765653, at *9 (W.D. Ky. Oct. 20, 2017) ("[I]t appears that West's termination was 'intimately intertwined' with his potentially FMLA-qualifying leave." (citing *Wallace v. FedEx Corp.*, 764 F.3d 571, 591 (6th Cir. 2014))).

---

[6] While Mullaney states that he was only informed of Stearns's need for FMLA in March 2016 but not in May 2016, his recollection differing from Stearns's is a factual issue that a jury must resolve.

8

For these reasons, there are material issues of fact precluding summary judgment on the FMLA retaliation claim. The Court will deny the motion on this basis. *See West v. Pella Corp.*, No. 5:16-CV-154-TBR, 2017 WL 4765653, at *10 (W.D. Ky. Oct. 20, 2017) (denying summary judgment for the employer on the plaintiff's FMLA retaliation claim when the plaintiff's purported absenteeism was necessarily intertwined with FMLA leave).

### 2. *FMLA Interference*

The FMLA also makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the law. 29 U.S.C. § 2615(a)(1). Because Stearns has presented no direct evidence to support his interference claim, the *McDonnell Douglas* burden-shifting framework also applies to this claim. *See Edgar*, 443 F.3d at 508 (citing *Skrjanc*, 272 F.3d at 313-16).

#### a. **Prima Facie Case**

To prove a prima facie case of interference with his FMLA rights, Stearns must prove:

> (1) [he] was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of [his] intention to take leave; and (5) the employer denied the employee FMLA benefits to which [he] was entitled.

*Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (quoting *Killian*, 454 F.3d at 556). While there does not appear to be any dispute that Stearns was an eligible employee and M&M was an employer under the FMLA, the Court must address the other elements of a prima face case.

##### i. **Entitlement to Leave**

First, M&M contends that there is insufficient proof that Stearns was eligible for FMLA because his wife's testimony shows that he was not eligible for FMLA leave at the time of his termination. (Def.'s Mem. Supp. Mot. Summ. J. 14-15). During Stearns's deposition, he testified that he discussed his wife's medical condition and potential need for surgery with Mullaney in

9

March 2016.⁷ (R. Stearns Dep. 93:11-25, DN 24-2). As Stearns recalled, Mullaney told him to request FMLA leave.⁸ (R. Stearns Dep. 104:1-105:13, DN 24-2).

In moving for summary judgment, M&M asks this Court to do precisely what it must not do—determine whether Stearns or his wife is more credible as to her health close in time to Stearns's termination. As the Sixth Circuit has stated:

> We emphasize . . . that "[i]n reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited." "[W]hen the non-moving party presents direct evidence refuting the moving party's motion for summary judgment, the court must accept that evidence as true." This is the case even when the nonmovant's account is contradictory.

*Schreiber v. Moe*, 596 F.3d 323, 333-34 (6th Cir. 2010) (internal citations omitted (citation omitted); *see also Buckman v. Ingersoll-Rand Co.*, No. 16-5918, 2017 U.S. App. LEXIS 14464, at *3-*4 (6th Cir. Apr. 14, 2017) (reversing the trial court's grant of summary judgment on the FMLA retaliation claim). Thus, accepting Stearns's testimony as true, he has presented sufficient evidence that he was eligible for FMLA leave based on his wife's serious medical condition to defeat summary judgment on his interference claim.

### ii. Notice of Intent to Take FMLA Leave

Stearns has also presented evidence that he notified M&M of his need for leave. While disputed by M&M, Stearns testified that he notified Mullaney in or around March 2016 of his wife's health issues and that Mullaney stated that Stearns should request FMLA leave. (Stearns Dep. 93:11-25, 104:24-105:2, 122:2-123:3). Subsequently, within two weeks prior to Stearns's

---

⁷ A prolapsed bladder could qualify as serious medical conditions under the FMLA. *See* 29 U.S.C. § 2611(11) ("The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider.").
⁸ Stearns's wife's doctor did not sign the certification form until June 27, 2016—more than a month after Stearns's termination. (Def.'s Mot. Summ. J. Ex. H, at 6, DN 24-9).

termination, he had a conversation with Murphy that Stearns and his wife believed she had bone cancer. (Murphy Aff. ¶ 12; Murphy Aff. Ex. 7, at 2).

M&M first criticizes Stearns for failing to provide adequate notice that he needed FMLA leave. (Def.'s Mem. Supp. Mot. Summ. J. 17). M&M then takes the contradictory position that Stearns failed to return the physician certification form prepared by Murphy to confirm Stearns' eligibility for FMLA leave. (Def.'s Mem. Supp. Mot. Summ. J. 17-18). Clearly, M&M had sufficient knowledge that Stearns may have needed FMLA leave that motivated in Murphy to prepare the certification form, which Stearns denied receiving. Construing the evidence in the light most favorable to Stearns, he has proven that he provided notice to M&M.[9]

### iii. Denial of FMLA Benefits

Finally, Stearns must prove that he was denied FMLA benefits as part of his *prima face* case. While M&M disputes that Stearns was entitled to FMLA leave, there is no dispute that Stearns did not receive FMLA leave following his conversations with Mullaney and Murphy. Accordingly, the Court will assume that Stearns has satisfied this element for the purposes of M&M's motion.

---

[9] In opposing M&M's motion, Stearns contends that M&M failed to provide him timely notice of his FMLA ineligibility which prohibits it from challenging his eligibility based upon 29 C.F.R. § 300, which implicates 29 C.F.R. § 825.110(d). (Pl.'s Resp. Def.'s Mot. Summ. J. 7-8). Courts have repeatedly held that this regulation is invalid because it expands the protections of FMLA. *See Davis v. Mich. Bell Tel. Co.*, 543 F.3d 345, 353-54 (6th Cir. 2008) (holding that the FMLA regulations imposing liability on employers for failing to give employees notice of ineligibility "are invalid due to the fact that they impermissibly expand FMLA eligibility beyond the parameters established in 29 U.S.C. § 2611(2)."); *see also Ouellette v. Fountainview of Monroe*, No. 11-13082, 2013 WL 5423084, at *8 n.1 (E.D. Mich. Sept. 26, 2013) ("[T]he Sixth Circuit, along with several other circuits, has concluded that imposing liability under FMLA for actions taken with respect to an employee who is not eligible for FMLA leave impermissibly broadens the FMLA eligibility requirements." (citing *Davis*, 543 F.3d at 353-54)).

11

### b. Defendant's Legitimate, Non-discriminatory Reason

Because Stearns met his burden of presenting a prima face case, the burden then shifts to M&M to articulate a legitimate, non-discrimination reasons for its termination of Stearns. *See Donald*, 667 F.3d at 761. When the evidence is construed in the light most favorable to Stearns, M&M has failed to meet its burden for the same reasons as in Stearns's retaliation claim, and the Court will deny summary judgment on this basis. *See Ezell v. Renal Care Grp., Inc.*, No. 5:17-CV-002-TBR-LLK, 2018 WL 2054562, at *9 (W.D. Ky. May 2, 2018) (holding that the employer failed to articulate a legitimate, nondiscriminatory discharge for the termination when the absences were intertwined with the request for FMLA leave); *West*, 2017 WL 4765653, at *8 (denying summary judgment on the plaintiff's FMLA interference claim because the employer's stated reasons were necessarily intertwined with plaintiff's alleged absenteeism).

### B. Defendant's Motion to Strike

M&M also moves to strike Stearns's Declaration (DN 28-1) filed in support of his opposition to M&M's dispositive motion. (Def.'s Mot. Strike 1, DN 32). In particular, M&M contends that the declaration improperly attempts to create a genuine issue of material fact by contradicting his prior deposition testimony. (Def.'s Mot. Strike 3-7). Stearns did not respond to this motion.

M&M's motion mischaracterizes parts of Stearns's deposition testimony. In addition, in attacking the veracity of the declaration, M&M reiterates the reasons why it believes it is entitled to summary judgment in this case. As discussed above, however, the Court denies M&M's motion for summary judgment, and the Court will deny M&M's motion to strike. *See also Childress Cattle, LLC v. Cain*, No. 3:17-CV-00388-JHM, 2017 WL 3446182, at *12 (W.D. Ky. Aug. 10,

2017) ("[M]otions to strike are generally disfavored. 'Rather than striking material, a court may simply ignore inadmissible evidence.'" (citation omitted)).

C. **Plaintiff's Motion for Alternative Dispute Resolution (DN 36)**

Finally, Plaintiff moves for the mediation of this matter. (Pl.'s Mot. Alternative Dispute Resolution 1-3, DN 36). During the telephonic conference on July 9, 2019, M&M indicated that it was not interested in mediating this dispute while its dispositive motion was pending. Accordingly, the Court will deny this motion.

IV. **CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 24), Defendant's Motion to Strike (DN 32), and Plaintiff's Motion for Alternative Dispute Resolution (DN 36) are **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

September 20, 2019

cc: counsel of record